# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ALASKA FINANCIAL COMPANY III, LLC, | No. 1:17-CV-01723 |
| Plaintiff. | (Judge Brann) |
| v. | |
| GLOBAL MORTGAGE GROUP, LLC; LFC GLOBAL, LLC; WELL ROCK HOLDINGS, LLC; and MATTHEW Q. HAINLINE, | |
| Defendants. | |

## MEMORANDUM OPINION

### JANUARY 26, 2018

Plaintiff Alaska Financial Company, LLC, moved to remand this case to the Delaware Court of Chancery after Defendants—Global Mortgage Group, LLC; LFC Global, LLC; Well Rock Holdings, LLC; and Matthew Q. Hainline— removed it to this Court. For the reasons that follow, that motion is denied.

## I.  BACKGROUND

On November 14, 2017, Alaska Financial Company, LLC ("Alaska") initiated a suit in the Delaware Court of Chancery against Defendants Global

Mortgage Group, LLC ("Global"), LFC Global, LLC ("LFC"), Well Rock Holdings, LLC ("Well Rock"), and Matthew Q. Hainline.[1]

Alaksa's complaint alleges that, during the late spring and the summer of 2017, the parties and their agents discussed plans to form a mortgage lending business together.[2] To this end, Tobias Preston—Alaska's President—and Matthew Hainline—Well Rock's Manager—signed a series of three agreements.[3] Pursuant to those agreements, Alaska wired more than $1 million to a Well Rock bank account[4] and alleges that it shared numerous trade secrets with the Defendants.[5] Despite these contributions, however, Alaska alleges that it was not given the agreed-upon level of control over the business, and that Defendants began to spend its cash on projects unrelated to the mortgage business.

The amended complaint[6] contains ten counts, including claims for breach of contract (Count II) and for conversion (Count VII). On November 15, 2017, Alaska moved for a temporary restraining order against the Defendants based on

---

[1] ECF No. 1, Ex. A (Alaska's Complaint).

[2] *Id.* ¶¶ 2, 19-29.

[3] *Id.* Ex. A (July 23, 2017 Letter from Mr. Hainline to Mr. Preston); Ex. B (August 6, 2017 "Global Mortgage Investment Agreement"); Ex. C (August 9, 2017 "First Amendment to Global Mortgage Investment Agreement").

[4] ECF No. 1, Ex. A ¶ 45.

[5] *Id.* ¶ 48.

[6] Alaska amended its complaint on November 21, 2017; the amendment changed only the name of the plaintiff. ECF No. 2 ¶ 1.

the complaint, and Defendants replied to this motion on November 20, 2017.[7] The Court of Chancery held a telephonic argument on the motion on November 21, 2017, and granted Alaska's TRO the next day, enjoining Defendants from using Alaska's trade secrets or cash, and requiring Defendants to submit a report to the court "on the amount of and location of" Alaska's funds.[8] The Court of Chancery also requested that the parties "confer and submit a joint stipulated implementing form . . . that defines the trade secrets that will be governed by the TRO."[9] Because the parties could not agree on this definition, they submitted competing proposals on this issue on November 27, 2017.[10]

On November 30, 2017, pursuant to 28 U.S.C. § 1446, Defendants removed the action to this Court on the basis of diversity jurisdiction.[11] Alaska filed the instant Motion to Remand on December 4, 2017.[12] After a teleconference on January 11, 2018, this Court ordered the parties to develop and submit a factual

---

[7] *Id.* ¶ 3.
[8] *Id.* ¶¶ 3-4.
[9] *Id.*
[10] *Id.* ¶ 4.
[11] ECF No. 2.
[12] ECF No. 6.

record and supplemental brief to assist in deciding Alaska's motion.[13] Those materials were submitted by the parties on January 22, 2018.[14]

## II. DISCUSSION

### A. Whether Complete Diversity Exists Between the Parties

Alaska makes two arguments as to why this action should be remanded to the Delaware Court of Chancery. First, Alaska argues that the parties to this action are not completely diverse and, therefore, that this Court lacks jurisdiction.

Under 28 U.S.C. § 1332(a), this Court has "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between . . . citizens of different States." When a case involves multiple plaintiffs or multiple defendants, there must be complete diversity—*i.e.*, "no plaintiff [may] be a citizen of the same state as any defendant."[15] The United States Court of Appeals for the Third Circuit has held that the citizenship of unincorporated associations, such as LLCs, is determined by the citizenship of the associations' partners or members.[16] And when "an LLC has,

---

[13] ECF No. 32.

[14] ECF Nos. 33, 34, 35.

[15] *Zambelli Fireworks Mfg. Co., Inc. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010).

[16] *Id.* at 420.

as one of its members, another LLC," its citizenship is "traced through however many layers of partners or members there may be."[17]

Alaska is an LLC whose sole member is McKinley Mortgage Company, LLC; McKinley's sole member, in turn, is Mr. Preston, who is a citizen of Alaska.[18] Therefore, in order for the parties to be completely diverse, none of the Defendants may be Alaskan citizens.

Well Rock is an LLC whose sole member is a Texan trust; Mr. Hainline is likewise a citizen of Texas.[19] LFC is an LLC whose sole member is Global,[20] and the Defendants allege that Well Rock is Global's sole member.[21] If that were true, all Defendants would be citizens of Texas, and complete diversity would exist. Alaska, however, contends that it became a member of Global by virtue of its cash investment and that, therefore, it shares its Alaskan citizenship with Global (and, for that matter, LFC).

---

[17] *Id.*

[18] ECF No. 2 ¶ 7.

The Third Circuit has noted that "[t]he party asserting diversity jurisdiction bears the burden of proof." *McCann v. Newman Irrevocable Trust*, 438 F.3d 281, 286 (3d Cir. 2006). However, if the party opposing diversity jurisdiction "does not challenge the facts alleged in the [party asserting diversity jurisdiction's] pleadings, a court may rule on the [issue] by accepting these allegations as true." *Id.* at 290. Here, Alaska—the party opposing diversity jurisdiction—challenges only Defendants' assertion that Alaska is not a member of Global. Therefore, the other jurisdictional allegations contained in Defendants' Notice of Removal will be presumed true.

[19] ECF No. 2 ¶¶ 8, 9.

[20] *Id.* ¶ 11.

[21] *Id.* ¶ 10.

As noted *supra*, Mr. Preston and Mr. Hainline signed three agreements during their business negotiations. Pursuant to the first agreement, dated July 23, 2017, Alaska agreed to invest $1 million in exchange for a 12.5% equity interest in Global.[22] The second agreement, which superseded the first agreement and was dated August 6, 2017, indicated that Alaska would receive the 12.5% equity interest after investing $1.1 million and "extend[ing] or caus[ing] to be extended a revolving line of credit" to Global "in the principal amount of at least" $2 million.[23] The third agreement, an amendment to the second, confirmed that, "[f]or an initial cash infusion of $1.1 million . . . plus the extension of a revolving line of credit to [Global] in the principal amount of at least $2 million . . . Alaska will receive a 12.5% equity interest in [Global]."[24]

Global was formed on August 23, 2017, and its LLC agreement indicates that, at that time, its sole member was Well Rock.[25] In its papers before this Court, Alaska admits that, while it provided the $1.1 million investment, it never extended

---

[22] ECF No. 2-1 at 314. The three agreements all indicate that Alaska would gain an equity stake in "Global Mortgage *Holdings*"; Alaska contends, however, that these agreements should be interpreted to give it a stake in Global Mortgage *Group*, a defendant here. Even assuming the interchangeability of those LLCs, however, does not help Alaska's position, because, as this opinion will conclude, Alaska never became a member of either of them.

[23] ECF No. 2-1 at 316.

[24] ECF No. 2-1 at 323. Under the second and third agreements, Alaska's equity stake in Global would increase, to up to 20%, depending on the amount Global drew from Alaska's line of credit.

[25] ECF No. 2-1 at 324.

any line of credit to Global.[26] Perhaps, as Alaska contends, the line of credit was not yet needed by Global; nevertheless, the plain language of the parties' agreement indicates that extending that credit was required for admission into Global.

Alaska argues that is should be entitled to *some* equity interest in Global—even if not the promised 12.5%—by virtue of its cash transfer to Well Rock's bank account. Under Delaware law, however, additional members are admitted to an existing LLC only as the LLC agreement provides—here, the agreement is silent—or "upon consent of all members and when the person's admission is reflected in the records of the [LLC]."[27] Alaska has produced no evidence that those criteria have been met; consequently, this Court may conclude that Alaska never acquired an equity interest in Global, that Well Rock is Global's sole member,[28] and that the parties are completely diverse.[29]

It may be that the parties, by their negotiations and actions (including Alaska's cash transfer), formed a joint venture. And it may be that Defendants'

---

[26] *See, e.g.*, ECF No. 35 at 5-6 ("There is no time frame specified as to when the line of credit was to be established . . . As a result, Global has not needed and does not yet have need of the line of credit . . . .").

[27] 6 Del. C. 18-301(b)(1).

[28] Alaska alleges that there is another member to Global (a Mr. Nick Fox, who purportedly owns a 2% interest in the LLC), and that Global must prove his diverse citizenship. The unchallenged evidence, however—*i.e.*, the August 23, 2017 operating agreement of Global, and the unfulfilled contractual obligations of Alaska—show that, although Defendants may be considering offering an equity interest to Mr. Fox, it has not done so yet.

[29] The parties do not dispute that the matter in controversy exceeds $75,000.

actions breached some agreement among the parties for operating that joint venture. But this suit was filed against four identified, distinct defendants—LFC, Global, Well Rock, and Mr. Hainline—none of whom legally share citizenship with Alaska. Diversity jurisdiction, then, is proper.

**B. Whether Defendants Waived their Right to Remove the Action to Federal Court**

Second, Alaska argues that Defendants waived their right to remove the action to this Court by participating in the TRO litigation in the Delaware Court of Chancery.

The Third Circuit has indicated that a party's intent to waive its removal rights by virtue of participating in state court proceedings must be "clear and unequivocal."[30] Waiver may occur, for example, where a defendant "attempts to experiment with the merits of his case in state court and then use removal to get a second chance or alternate appeal route in federal court," or "where the defendant takes an affirmative action evincing an intent to remain in state court."[31] There is, however, a "long-settled rule that opposing a motion for a temporary restraining order in state court does not waive the right to remove."[32]

---

[30] *Foster v. Chesapeake Ins. Co., Ltd.*, 933 F.2d 1207, 1217 n.15 (3d Cir. 1991).

[31] *Boggs v. Harris*, 226 F.Supp.3d 475, 481-82 (W.D. Pa. 2016) (internal quotation marks and citations omitted).

[32] *Rothner v. City of Chicago*, 879 F.2d 1402, 1418 (7th Cir. 1989).

It is true, as Alaska points out, that *Rothner* was interpreting a previous version of 28 U.S.C. § 1447(c), and that at least one federal district court in the Seventh Circuit has noted that

And that is all Defendants here did. Six days after Alaska filed its complaint, and five days after it moved for a temporary restraining order, Defendants filed a written opposition to the TRO. The next day, they dialed into a telephonic hearing on the motion with a Delaware Court of Chancery Vice Chancellor. When the TRO issued, they complied with it by submitting a proposal attempting to identify Alaska's alleged trade secrets. Defendants did not "experiment with the merits of [their] case"; in fact, under Delaware law, Alaska needed only to show that its claim was "colorable"[33]—a low bar, indeed. And they evinced no "intent to remain in state court"; in fact, they removed the case to this Court sixteen days after it commenced, very comfortably within the 30-day window prescribed by 28 U.S.C. § 1446(b). Defendants, then, did not waive their right of removal.

---

"*Rothner*'s analysis . . . became obsolete when Congress subsequently revised the removal statutes." *Fate v. Buckeye State Mut. Ins. Co.*, 174 F.Supp.2d 876, 880-81 (N.D. Ind. 2001). That line from *Fate*, however, simply refers to *Rothner*'s holding that the previous version of § 1447(c) did *not* authorize remands on the basis of waiver, which holding the court in *Fate* found abrogated by the revision. Alaska (obviously) disagrees with *Rothner*'s holding on the availability of a waiver-based remand, but it does not cast doubt on *Rothner*'s observation on the "long-settled rule that opposing a motion for a temporary restraining order in state court does not waive the right to remove." *Rothner*, 879 F.2d at 1418; *see also Rose v. Giamatti*, 721 F.Supp. 906, 922 (S.D. Ohio 1989) ("[A]s a general rule, merely defending against a temporary restraining order does not constitute a waiver of the right to remove.").

[33] ECF No. 2-1 at 432.

## III. CONCLUSION

For the reasons discussed above, Plaintiff's Motion to Remand will be denied. An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge